[Cite as *State v. A.S.*, 2022-Ohio-3833.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220259 |
| | | TRIAL NO. 18CRB-19780 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| A.S., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: October 28, 2022

*Emily Smart Woerner*, Interim City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Rebecca Barnett*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender*,* and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} In 2018, defendant-appellant A.S. entered a guilty plea to one count of misdemeanor theft. A few years later, in 2021, A.S. sought to seal the record of her conviction in order to facilitate educational and professional opportunities. Although the state did not object, the trial court refused to seal the record, relying on arguments the state never advanced and that run afoul of the record at hand. A.S. now appeals, asserting in her sole assignment of error that the trial court erred in finding that a governmental interest outweighed her interest in having the record sealed. We agree, reverse the judgment of the trial court, and remand this cause with instructions for the trial court to seal the record.

I.

{¶2} In July 2018, A.S. was charged by criminal complaint with one count of petty theft in violation of R.C. 2913.02, a first-degree misdemeanor. Her only offense was switching the price tags on a comforter set at Target, designed to save herself a little money. In October 2018, after having found A.S. eligible for diversion, the trial court ordered her to participate for six months in the Hamilton County Diversion Program established in accordance with R.C. 2935.36. In conjunction with this order, A.S. entered a guilty plea to the theft offense as charged.

{¶3} In February 2019, on motion by the state, the trial court issued an entry reinstating A.S.'s case to the court's active docket following her failure to complete the diversion program. According to the court's entry, A.S. had failed to fulfill the following conditions of the program: attend an N.C.T.I. Critical Thinking Class by January 2019; pay an administrative fee of $133; complete 60 community-service hours; and attend monthly meetings. In August 2019, the trial court sentenced A.S. to

2

a suspended 180-day jail term and six months of community control. Six months later, in February 2019, the trial court terminated A.S.'s community control.

**{¶4}** Three years after her offense, in July 2021, A.S. filed her first application to seal the record of her theft conviction. The trial court denied the request, but indicated that it might be open to further requests down the road. A.S. accordingly filed a second application to seal the record of her conviction in March 2022. This application, too, was denied by the trial court after a hearing. Although the state did not object to sealing the record, the trial court concluded that the government's interest in maintaining the record as public outweighed A.S.'s interest in sealing the record. This appeal followed.

II.

**{¶5}** In her sole assignment of error, A.S. maintains that the trial court erred in denying her application to seal the record of her misdemeanor theft conviction. "In Ohio, sealing an individual's criminal record is an act of grace" created by the state. *State v. R.S.*, 1st Dist. Hamilton Nos. C-210169, C-210170, C-210171, C-210172, and C-210173, 2022-Ohio-1108, ¶ 10. "We review a trial court's decision to deny an application to seal records for an abuse of discretion." *State v. McVean*, 1st Dist. Hamilton Nos. C-210459 and C-210460, 2022-Ohio-2753, ¶ 7, citing *State v. Sager*, 2019-Ohio-135, 131 N.E.3d 335, ¶ 9 (1st Dist.). We will thus not reverse the trial court's judgment unless the court has exercised its discretionary judgment over the matter in an unwarranted way or committed legal error. *See Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35.

**{¶6}** Under R.C. 2953.32, which governs a trial court's decision to grant or deny an application to seal a record of conviction, an "eligible offender" may apply to

3

the sentencing court for the sealing of a criminal record. "A court may grant an application if the requirements identified by R.C. 2953.32(C)(1) are satisfied." *R.S.* at ¶ 10, citing *Sager* at ¶ 10. After determining whether the applicant is an eligible offender, R.C. 2953.32(C)(1) requires the trial court to make determinations, including whether criminal proceedings are pending against the applicant, whether the applicant has been rehabilitated, and whether the interests of the applicant in having his or her record sealed outweigh the legitimate needs, if any, of the government. "After weighing the interests of the applicant and government, the court 'shall order all official records of the case' sealed if the 'legitimate government needs to maintain those records' do not outweigh the applicant's interest in sealing her records." *R.S.* at ¶ 11, quoting R.C. 2932(C)(2).

**{¶7}** R.C. 2953.32 is a "remedial statute," *R.S.* at ¶ 10, that is "construed liberally to promote [its] purpose and assist the parties in obtaining justice." *State v. Young*, 5th Dist. Morrow No. 2021 CA 0009, 2022-Ohio-593, ¶ 21. The purpose of sealing a record of conviction is to recognize that people may be rehabilitated. *State v. Petrou*, 13 Ohio App.3d 456, 456, 469 N.E.2d 974 (9th Dist.1984). As the Eighth District aptly explained in *State v. Hilbert*, 145 Ohio App.3d 824, 827, 764 N.E.2d 1064 (8th Dist.2001) in reviewing the record-sealing statute,

> [P]eople make mistakes, but * * * afterwards they regret their conduct and are older, wiser and sadder. The enactment and amendment of R.C. 2953.31 and 2953.32 is, in a way, a manifestation of the traditional Western civilization concepts of sin, punishment, atonement, and forgiveness. Although rehabilitation is not favored in current penal

4

thought, the unarguable fact is that some people do rehabilitate themselves.

{¶8} Moreover, considering the real-world effects of prior convictions can help contextualize applicants' interests in having their records sealed. "The consequences of 'a misdemeanor conviction today are real and significant.' " *R.S.*, 1st Dist. Hamilton Nos. C-210169, C-210170, C-210171, C-210172, and C-210173, 2022-Ohio-1108, at ¶ 30, quoting *City of Cleveland Hts. v. Lewis*, 129 Ohio St.3d 389, 2011-Ohio-2673, 953 N.E.2d 278, ¶ 34 (Lundberg Stratton, J., concurring). "A convicted criminal suffers not only from public penalties but from stigma, the reluctance of others to interact with him economically and socially." *Commonwealth v. Pon*, 469 Mass. 296, 316, 14 N.E.3d 182 (2014), quoting Rasmusen, *Stigma and Self-Fulfilling Expectations of Criminality*, 39 J.L. & Econ. 519, Abstract (1996). In addition to the collateral impacts of a conviction on employment opportunities, individuals with criminal records face obstacles to accessing housing, higher education, loans, and credit (which is precisely part of the reason why the legislature provided a sealing mechanism).

{¶9} Beyond the interests of the applicant herself, the government has an interest in promoting the positive consequences that can flow from record sealing. For instance, the government has compelling interests in "reducing recidivism, facilitating reintegration, and ensuring self-sufficiency by promoting employment and housing opportunities for former criminal defendants," all of which are furthered, in appropriate cases, by record sealing. *Pon* at 315. "Where there is persuasive evidence that employers and housing authorities consider criminal history in making decisions, there is now a fully articulated governmental interest in shielding criminal history

information from these decision makers where so doing would not cause adverse consequences to the community at large." *Id.*

**{¶10}** R.C. 2953.32 provides persons with qualifying offenses who have demonstrated rehabilitation with a second chance, so that they can avoid these collateral consequences of a criminal record and the associated obstacles to becoming a thriving and productive member of society. *See R.S.* at ¶ 10, quoting *Sager*, 2019-Ohio-135, 131 N.E.3d 335, at ¶ 9 ("Record sealing provides 'remedial relief to qualified offenders in order to facilitate the prompt transition of these individuals into meaningful and productive roles.' ").

**{¶11}** Turning now to the case at hand, A.S. asserts that the trial court's determination that the government's interest in maintaining her record as public outweighed her interest in having the record sealed constitutes an abuse of discretion. On appeal, the state agrees, declining to defend the judgment below.

**{¶12}** "Under R.C. 2953.32(C)(1)(e), the court must weigh the applicant's interest in sealing the applicant's record against the 'legitimate needs, *if any*, of the government.' " (Emphasis added) *R.S.* at ¶ 26, quoting R.C. 2953.32(C)(1)(e). The applicant has the burden "of demonstrating that [her] interests in having the records in the case sealed are at least equal to the legitimate governmental need to maintain the record." *State v. Haney*, 70 Ohio App.3d 135, 139, 590 N.E.2d 445 (10th Dist.1991). Among other evidence, an applicant can satisfy this burden with "testimony that [her] conviction has damaged [her] ability to earn a living." *State v. Shaffer*, 11th Dist. Geauga No. 2009-G-2929, 2010-Ohio-6565, ¶ 30.

**{¶13}** While the trial court concluded that the government's interest in record maintenance outweighed A.S.'s interest in having the record sealed, every relevant

consideration in the record points in the other direction. A.S. has a strong interest in sealing the record of her conviction. Over the past few years, she has gone from working in a factory to obtaining employment as a state tested nurse aide. Her new job has been jeopardized by increasing employer reliance on background checks. Furthermore, A.S. seeks to obtain further education to become a registered nurse. However, the Ohio Medical Career College viewed her theft conviction as a potential barrier to her certification as a nurse, and suggested that it would deny her admission unless her conviction was sealed. A.S. also has two young daughters to provide for. At her hearing, A.S. presented a clear showing of economic, career, and family-oriented interests in having her record sealed.

{¶14} A.S. has had no further contact with the criminal justice system since her conviction, her conviction was for a misdemeanor, and the stigma of her conviction may well prevent her from furthering her education or job opportunities. Her case, in other words, is the quintessential one where we want the individual to be able to pursue her dreams and benefit the community in the process. Recognizing this, the state declined to offer any interests whatsoever in response and did not oppose the sealing of the record. And in fact, the state concedes that "the record reflects that [A.S.] is seeking that her record be sealed in order to pursue further education and employment, and *thus has a greater interest* in sealing the conviction."

{¶15} The trial determined sua sponte that "there's a government interest in maintaining public access, full public open access to court records such as this. In this case, I think there's an interest in * * * employers having access to records such as this." According to the trial court, the government's interest is that a petty theft conviction could be relevant to any line of work involving trust, including A.S.'s pursuit

7

of a career in the healthcare field. But the nature of the offense "cannot provide the sole basis to deny an application." *R.S.*, 1st Dist. Hamilton Nos. C-210169, C-210170, C-210171, C-210172, and C-210173, 2022-Ohio-1108, at ¶ 29; *State v. M.D.*, 8th Dist. Cuyahoga No. 92534, 2009-Ohio-5694, ¶ 22. On these facts, the trial court invoked no cognizable legitimate government interest to support its decision to deny A.S.'s application to seal her record. Indeed, its rationale would mean that virtually no one would ever qualify for sealing their records, which represents the antithesis of "liberally," *R.S.* at ¶ 10, construing the statute. *See McVean*, 1st Dist. Hamilton Nos. C-210459 and C-210460, 2022-Ohio-2753, at ¶ 13 ("The state seemed content with sealing for Mr. McVean, but the trial court refused to accept that outcome, going out of its way to divine a justification that even the state didn't seriously advance."). On this record, "[t]o deny the sealing of the record in this case, where the government has not expressed or demonstrated any need to maintain it, is unreasonable and thus an abuse of discretion." *See State v. Garry*, 173 Ohio App.3d 168, 2007-Ohio-4878, 877 N.E.2d 755, ¶ 7 (1st Dist.); *McVean* at ¶ 14.

\* \* \*

{¶16} In light of the foregoing analysis, we sustain A.S.'s sole assignment of error. We reverse the judgment of the trial court and remand this matter to the trial court with instructions to seal the record of A.S.'s misdemeanor petty theft conviction.

Judgment reversed and cause remanded.

CROUSE and BOCK, JJ., concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.

8